MERCY HOSPITAL, Plaintiff,

v.

Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant.

Civ. A. No. 91–1892 SSH.

United States District Court, District of Columbia.

May 21, 1993.

Donna M. Barry, Vinson & Elkins, Washington, DC, for plaintiff.

H. Anthony Lim, Office of Gen. Counsel, Dept. of Health and Human Services, Baltimore, MD and Asst. U.S. Atty. John R. Munich, U.S. Atty's Office, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff Mercy Hospital has brought this action to challenge the Secretary's decision to deny plaintiff certain Medicare reimbursements claimed under the Medicare Act, 42 U.S.C. § 1395ww. Judicial review of the decision is established under 42 U.S.C. § 1395oo(f). The case is now before the Court on cross-motions for summary judgment, which have been fully briefed.[1] Although findings of fact and conclusions of law are unnecessary in ruling on summary judgment motions, Fed.R.Civ.P. 52(a), the Court does set forth its reasoning.

### I. Factual Background

Plaintiff is a nonprofit corporation operating an acute care hospital in Miami, Florida. In the late 1970's, plaintiff experienced an increase in demand for its services and began planning an expansion project, called the North Tower Project, to add a 200–bed

---

1. This case was reassigned to the undersigned by the court's Calendar Committee on February 14, 1992.

structure to the existing hospital complex. Contrary to plaintiff's expectations, the demand for hospital services declined sharply in 1983, rendering the project unnecessary. In the summer of 1983, plaintiff decided to abandon the project; this decision was formally executed on November 23, 1983. By that time, plaintiff had spent $3,153,948 on architectural, engineering, and other plans, although actual construction never began. The $3,153,948 in "abandoned planning costs" was therefore lost.

Plaintiff claimed these losses as capital-related costs on its Medicare reimbursement application. Under the Medicare system, certain costs are reimbursed on a reasonable-cost basis and others on an incentive scheme. The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") implemented the target rate reimbursement system that applies to this case. TEFRA target amounts are determined by a hospital's costs for its base year and increased by a specific percentage in each subsequent year. 42 U.S.C. § 1395ww(b)(3). These targets determine the rate of reimbursement by the Medicare program: if a hospital's operating costs per year exceed the target amount, only a certain percentage of the cost overrun is reimbursed; if operating costs are below the target amount, the hospital is awarded a bonus payment in addition to its reimbursement. 42 U.S.C. § 1395ww(b)(1). Capital-related costs, which are classified separately from operating costs, are excluded from this target system and reimbursed according to the reasonable-cost method. 42 U.S.C. § 1395ww(a)(4). By classifying its abandoned planning costs as capital-related, plaintiff sought reasonable-cost reimbursement for the Tower Project losses.

Plaintiff's cost assessments were reviewed by a fiscal intermediary responsible for evaluating plaintiff's claims under the Medicare program. The fiscal intermediary allowed $2,788,434 of plaintiff's abandoned planning costs claim, but reclassified the costs as operational. The costs were therefore included in plaintiff's TEFRA calculation for the 1984 cost reporting period.

On May 29, 1986, plaintiff asked the Health Care Financing Administration ("HCFA") to grant an exception or adjustment and subtract the abandoned planning costs from plaintiff's TEFRA amount pursuant to 42 C.F.R. § 405.463 (redesignated as § 413.40). On April 2, 1987, the HCFA denied this request, stating that an exception cannot be granted to a hospital seeking to increase its incentive payment, but only where a hospital has exceeded its TEFRA cost limit and would not receive reimbursement for its total reasonable costs without an adjustment.

Plaintiff appealed the HCFA's decision on its adjustment claim and the classification of abandoned planning costs as operational to the Provider Reimbursement Review Board. *See* 42 U.S.C. § 1395oo. The Board ruled that the abandoned planning costs should be classified as capital-related, but added that if the costs were not capital-related, plaintiff had no right to an adjustment or exception. Admin. Record (AR) at 30–44.

In the final stage of the administrative proceedings, the HCFA Administrator reversed the Board's finding that the abandoned planning costs were capital-related and affirmed the Board's refusal to grant exception or adjustment relief. AR at 2–9. The Administrator's rulings are the final decision of the Secretary in this matter. Plaintiff challenges both rulings in this lawsuit.

## II. Standard of Review

The Medicare Act provides for judicial review of the Secretary's decision. 42 U.S.C. § 1395oo(f)(1). The Administrative Procedure Act, 5 U.S.C. § 706(2), supplies the applicable standard of review. *Memorial Hosp./Adair County Health Ctr. v. Bowen,* 829 F.2d 111, 116 (D.C.Cir.1987). An agency decision should only be overturned if unsupported by the evidence in the record, 5 U.S.C. § 706(2)(E), or if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The Court must consider whether the agency's decision is based on relevant factors, but "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136.

### III. Analysis

#### A. Whether Abandoned Planning Costs Are Capital–Related

■ Plaintiff argues that its abandoned planning costs should be classified as capital-related because the abandoned plans were for a capital project. The Secretary's contrary decision is arbitrary and capricious, according to plaintiff. Plaintiff also challenges the Secretary's reliance on a regulatory definition of capital-related, arguing that the regulation did not apply to the 1984 cost reporting period. These arguments fail, for the following reasons.

The Secretary's classification of abandoned planning costs relies upon a distinction between completed and unfinished projects. Plaintiff argues that it should make no difference that the project was never completed because the planning costs should be classified according to their purpose, and the purpose of these costs was to fund a capital-related project.

Plaintiff does not accept the obvious and legitimate reasons underlying the Secretary's decision to treat completed projects differently from abandoned projects for purposes of Medicare reimbursement. Completed projects provide services to Medicare patients and therefore are of value to the Medicare program, while abandoned projects never contribute any such value. Reasonable-cost reimbursement for completed projects but not unfinished projects provides an incentive for hospitals to invest in projects that are likely to be completed. As another Judge of this Court stated in considering this same issue, "[t]he distinction between completed and unfinished projects is not merely rational, but economically advisable." *Grossmont Hosp. Corp. v. Sullivan*, 826 F.Supp. 1, 4 (D.D.C.1993).

The Secretary's application of the regulatory definition of capital-related to this case is also justified. Plaintiff points out that the regulatory definition did not apply to the 1984 cost reporting period, which began in September 1983, citing the regulation:

(ii) For cost reporting periods beginning on or after October 1, 1982 and before October 1, 1983, these operating costs.... exclude the costs of malpractice insurance, certain kidney acquisition costs, capital-related costs, the Medicare inpatient routine nursing salary cost differential....

(iii) For cost reporting periods beginning on or after October 1, 1983, these operating costs exclude only capital-related costs as described in § 413.130 [formerly § 405.-414], return on equity capital as described in § 413.157....

42 C.F.R. § 413.40(c)(1). Regardless of whether the definition in section 413.130 (subsection iii, above) applied to the cost reporting period at issue, however, there is no indication that the regulation changed the definition that had been in use (subsection ii). The addition of the reference to section 413.-130 provided a clarification of the term capital-related, not a new meaning for the term. It would be needlessly confusing to assume that the term capital-related had two different meanings in subsections (ii) and (iii) of the regulation. Similarly, plaintiff's argument that capital-related has a different meaning in the TEFRA scheme than in the rest of the Medicare program calls for an illogical interpretation of the TEFRA regulations. The later regulation, applied to cost reporting periods subsequent to the codification of the definition, merely clarified principles of Medicare reimbursement that were already in use and therefore can apply to cost reporting periods beginning both before and after October 1983. The Secretary's use of the stated definition to explain the Administrator's decision in this case is rational and appropriate. There is no unfairness in the retroactive application of section 413.130 where the definition did not change the meaning that had been in use.

As the Secretary notes, the definition in 42 C.F.R. § 413.130(a) limits the meaning of capital-related costs to the costs specifically listed in the regulation. Abandoned planning costs are not included among the listed costs. The Secretary's decision that abandoned planning costs are not covered by the regulation is rational and serves legitimate goals of the Medicare reimbursement system, for the reasons stated above. This conclusion is consistent with the decisions of several other courts that have adjudicated this issue.

**4**

*Grossmont Hosp. Corp. v. Sullivan,* 826 F.Supp. 1, 4 (D.D.C.1993); *Mary Hitchcock Memorial Hosp. v. Secretary of Health & Human Servs.,* No. 91–666, 1992 WL 420860 (D.N.H. Nov. 30, 1992); *Methodist Hosp. v. Sullivan,* No. S–89–0634, 1990 WL 85942 (E.D.Cal. Feb. 27, 1990).

### B. Whether Plaintiff is Entitled to Adjustment or Exception

Congress directed the Secretary to make adjustments or exceptions to a hospital's TEFRA payment "where events beyond the hospital's control or extraordinary circumstances ... create a distortion in the increase in costs for a cost reporting period...." 42 U.S.C. § 1395ww(b)(4)(A). Plaintiff claims that this statute mandated an adjustment to its TEFRA payment for its lost abandoned planning costs. According to plaintiff, the Secretary's stated policy of refusing to adjust payments that increase a hospital's bonus payment, *see* AR at 513, is inconsistent with the statute.

Plaintiff's argument reads too much into the statute. The statute requires that there be an adjustment process, but does not specify what is meant by "extraordinary circumstances" or cost "distortions," leaving these matters to the Secretary's discretion. The Secretary denied plaintiff's request because plaintiff's cost increase, which resulted in a lower bonus payment but no losses to plaintiff, was not the sort of distortion for which adjustments are granted under the Secretary's policy. Granting adjustments only where a hospital stands to lose money is a reasonable accommodation of hospitals' needs. Allowing hospitals to absorb cost increases that do not result in losses is consistent with the TEFRA incentive scheme. Nothing in the statute requires an adjustment or exception in plaintiff's circumstances.

### IV. Conclusion

The Secretary's refusal to grant an adjustment or exception is reasonable and consistent with the Medicare statutes and regulations. Neither this decision nor the Secretary's classification of abandoned planning costs as operational is an abuse of the Secretary's powers under the Medicare program.

Accordingly, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted.